IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EDWARD M. REIMAN,                                              CV. 05-6160 MO

                 Plaintiff,                         OPINION AND ORDER

         v.

JOANNE B. BARNHART
Commissioner of Social Security,

            Defendant.

MOSMAN,  Judge:

## **INTRODUCTION**

Plaintiff Edward Reiman ("Reiman"), brings this action pursuant to the Social Security Act, 42 USC § 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for disability insurance benefits ("DIB").   For the reasons set forth below, the decision of the Commissioner is affirmed.

/ / /

1  - OPINION AND ORDER

**PROCEDURAL BACKGROUND**

Reiman filed this application for DIB on June 20, 2002, alleging disability from June 6, 2002, due to lumbar degenerative disc disease.   His application was denied initially and upon reconsideration.  On August 12, 2004, a hearing was held before an Administrative Law Judge ("ALJ").   In a decision dated December 16, 2004, the ALJ found Reiman was not entitled to benefits.  On April 6, 2005, the Appeals Council denied Reiman's request for  review, making the ALJ's decision the final decision of the Commissioner.  Reiman now seeks judicial review of the Commissioner's decision.

**STANDARDS**

A claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 USC § 423(d)(1)(A).  The initial burden of proof rests upon the claimant to establish his or his disability. *Roberts v. Shalala*, 66 F3d 179, 182 (9th Cir 1995), *cert. denied*, 517 US 1122 (1996). The Commissioner bears the burden of developing the record. *DeLorme v. Sullivan*, 924 F2d 841, 849 (9th Cir 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 USC § 405(g); *see also Andrews v. Shalala*, 53 F3d 1035, 1039 (9th Cir 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews*, 53 F3d at 1039.  The court must weigh all of the evidence, whether it supports or detracts from the

Commissioner's decision. *Martinez v. Heckler*, 807 F2d 771, 772 (9th Cir 1986). The

Commissioner's decision must be upheld, however, if "the evidence is susceptible to more than

one rational interpretation." *Andrews*, 53 F3d at 1039-40.

## DISABILITY ANALYSIS

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is

disabled within the meaning of the Act. 20 CFR §§ 404.1520, 416.920. Below is a summary

of the five steps, which also are described in *Tackett v. Apfel*, 180 F3d 1094, 1098-99 (9th Cir

1999):

Step One. The Commissioner determines whether claimant is engaged in substantial

gainful activity. If so, claimant is not disabled. If claimant is not engaged in substantial gainful

activity, the Commissioner proceeds to evaluate claimant's case under step two. 20 CFR

§§ 404.1520(b), 416.920(b).

Step Two. The Commissioner determines whether claimant has one or more severe

impairment. If not, claimant is not disabled. If claimant has a severe impairment, the

Commissioner proceeds to evaluate claimant's case under step three. 20 CFR §§ 404.1520(c),

416.920(c).

Step Three. Disability cannot be based solely on a severe impairment; therefore, the

Commissioner next determines whether claimant's impairment "meets or equals" one of the

impairments listed in the Social Security Administration (SSA) regulations, 20 CFR Part 404,

Subpart P, Appendix 1. If so, claimant is disabled. If claimant's impairment does not meet or

equal one listed in the regulations, the Commissioner's evaluation of claimant's case proceeds

under step four. 20 CFR §§ 404.1520(d), 416.920(d).

Step Four.  The Commissioner determines whether claimant is able to perform work he or she has done in the past.  If so, claimant is not disabled.  If claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of claimant's case proceeds under step five.  20 CFR §§ 404.1520(e), 416.920(e).

Step Five.  The Commissioner determines whether claimant is able to do any other work. If not, claimant is disabled.  If the Commissioner finds claimant is able to do other work, the Commissioner must show a significant number of jobs exist in the national economy that claimant can do.  The Commissioner may satisfy this burden through the testimony of a vocational expert ("VE") or by reference to the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2.  If the Commissioner demonstrates a significant number of jobs exist in the national economy that claimant can do, claimant is not disabled.  If the Commissioner does not meet this burden, claimant is disabled.  20 CFR §§ 404.1520(f)(1), 416.920(f)(1).

At steps one through four, the burden of proof is on the claimant.  *Tackett*, 180 F3d at 1098.  At step five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy.  *Id*

**ALJ's DECISION**

At step one, the ALJ found, for the purposes of this decision only, that Reiman had not engaged in substantial gainful activity since the alleged onset of his disability.

At step two, the ALJ found Reiman had the medically determinable severe impairments of degenerative disc disease and tinnitus.

At step three, the ALJ found that Reiman's impairments did not meet or medically equal the criteria of any listed impairments.

4  - OPINION AND ORDER

At step four, the ALJ found that Reiman was not fully credible and retained the residual functional capacity to perform light or sedentary work with occasional stooping, bending, and ladder climbing, an opportunity to change positions every hour to one and one-half hours, and limited exposure to concentrated noise.  The ALJ found that Reiman was limited from lifting more than ten pounds frequently and 20 pounds occasionally.  The ALJ concluded that Reiman was able to perform his past work as a retail store manager as described in the Dictionary of Occupational Titles, though not as Reiman had performed it, and was therefore not disabled.

## FACTUAL BACKGROUND

Born in November 1946,  Reiman was 58 years old at the time of the ALJ's decision.  Tr. 361[1].  He has a high school degree and completed two years of college.  Reiman served in the United States Army in Vietnam from 1967-1969, and was honorably discharged.  Tr. 175.   He has worked as a lumber sales representative and as manager of a retail store.  Tr. 362.  He last worked in August 2002.  Tr. 361.

The medical records submitted in this case accurately set forth Reiman's medical history as it relates to his claim for benefits.  The court has carefully reviewed the extensive medical record, and the parties are familiar with it.  Accordingly, the details of those medical records will be set out only as they are relevant.

## DISCUSSION

Reiman contends that the ALJ erred at step four of the analysis by: (1)  finding him not fully credible;   (2)  rejecting the opinions of his treating and examining physicians; (3) failing to

_____

[1]  Citations are to the page(s) indicated in the official transcript of the record filed with the Commissioner's Answer.

5  - OPINION AND ORDER

give proper credit to the decision of the Veteran's Administration ("VA"); and  (4) finding he

retains the capacity to perform his past work.

I.  <u>The ALJ Provided Clear and Convincing Reasons to Find Reiman Not Entirely Credible</u>

       The ALJ is responsible for determining credibility, resolving conflicts in medical

testimony, and for resolving ambiguities. *Andrews v. Shalala,* 53 F3d 1035, 1039 (9th Cir 1995).

However, the ALJ's findings must be supported by specific, cogent reasons. *Reddick v. Chater,*

157 F3d 715, 722 (9th Cir 1998).  Unless there is affirmative evidence showing that the claimant

is malingering, the Commissioner's reason for rejecting the claimant's testimony must be "clear

and convincing." *Id.*  The ALJ must identify what testimony is not credible and what evidence

undermines the claimant's complaints. *Id.*  The evidence upon which the ALJ relies must be

substantial. *Reddick,*  157 F3d at 724. *See also Holohan v. Massinari,*  246 F3d 1195, 1208 (9th

Cir 2001).  General findings (e.g., "record in general" indicates improvement) are an insufficient

basis to support an adverse credibility determination. *Reddick* at 722; *see also Holohan,* 246

F.3d at 1208.  The ALJ must make a credibility determination with findings sufficiently specific

to permit the court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony.

*Thomas v. Barnhart,* 278 F3d 947, 958 (9th Cir 2002).

       In deciding whether to accept a claimant's subjective symptom testimony, "an ALJ must

perform two stages of analysis:  the *Cotton* analysis and an analysis of the credibility of the

claimant's testimony regarding the severity of her symptoms [footnote omitted.]" *Smolen v.*

*Chater,* 80 F3d 1273, 1281 (9th Cir 1996).

/ / /

/ / /

6  - OPINION AND ORDER

> Under the *Cotton* test, a claimant who alleges disability based
> on subjective symptoms "must produce objective medical evi-
> dence of an underlying impairment which could reasonably
> be expected to produce the pain or other symptoms alleged...."
> *Bunnell,* 947 F.2d at 344 (quoting 42 U.S.C. § 423(d)(5)(A)(1988));
> *Cotton,* 799 F.2d at 1407-08.  The *Cotton* test imposes only two
> requirements on the claimant:  (l) she must produce objective
> medical evidence of an impairment or impairments; and (2) she
> must show that the impairment or combination of impairments
> *could reasonably be expected to* (not that it did in fact) produce
> some degree of symptom.

*Smolen*, 80 F.3d at 1282 (italics in original).

If an ALJ notes at least "arguably germane reasons for dismissing" testimony, "even if he did not clearly link his determination to those reasons" then the ALJ's decision is supported by substantial evidence.  *Lewis v. Apfel,* 236 F3d 503, 511-512 (9th Cir 2001).

The ALJ found that Reiman's subjective complaints were exaggerated and not fully credible.  Tr. 20.  Reiman points to his May 2002 MRI which revealed "chronic degenerative disc disease most marked at L3-4 and L5-S1 with transverse and forminal annular bulges throughout the lumbar spine." Tr. 215.  The MRI did not show any focal disc herniation.

The ALJ noted that, as of March 2003, Reiman walked three times a week, used the internet, drove, fished, and traveled on airplanes to Vietnam and back at least yearly.  Tr. 19-20. In July 2002, Reiman's friend stated that he shopped several times a week, visited friends or relatives several times per month, and left the house several times a day.  Tr. 115.  She reported that Reiman went to movies, dined out and went fishing, that he got along well with his friends, that he prepared meals for himself and others, and that he occasionally did the laundry, dusting, and vacuuming.  Tr. 114-125.  Reiman married in July 2003.  The ALJ noted that Reiman asserted disability as of June 6, 2002, yet continued to work at his retail store 50 to 60 hours per

week until June 16, 2002.  Tr. 20, 81.  Reiman then reduced his work to 24 hours per week until

he sold his business on August 12, 2002.  Reiman's daily activities are inconsistent with his

subjective complaints.

In addition, the ALJ identified inconsistent statements that support his conclusion that

Reiman is not fully credible.  Reiman alleged disability in June 2002 based on back pain, but in

August 2002 told Nurse Welches that he was disabled because "he just could not meet the public

any longer."  Tr. 163.  In November 2002 he reported to William A. McConochie, Ph.D. that his

physician recommended that he stop working because of his back problems.  Tr. 153.  Reiman

testified that his physicians "suggested probably it wouldn't be a good idea for me to continue to

do the work I was doing."  Tr. 362.  However, as the ALJ noted, there is no medical opinion of

record in which a physician advised Reiman to stop working.  Tr. 20.

Finally, the ALJ found that Reiman was not fully credible because he exaggerated the

extent of his limitations.  Tr. 20.  Reiman described his back condition as "inoperable," yet

regularly traveled to Montana and to Vietnam.  Reiman alleged that his back pain prevented all

work, yet he required no emergency pain treatment and usually took only Ibuprofen.  Tr. 19, 162.

The ALJ identified clear and convincing reasons to find Reiman not fully credible.

II.  The ALJ Had Clear and Convincing Reasons to Reject the Opinions of the Treating
Physicians

If a treating physician's medical opinion is supported by medically acceptable diagnostic

techniques and is not inconsistent with other substantial evidence in the record, the treating

physician's opinion is given controlling weight.  *Holohan v. Massanari,* 246 F3d 1195, 1202 (9th

Cir 2001); 20 CFR § 404.1527(d)(2).   In general, the opinion of specialists concerning matters

relating to their specialty are entitled to more weight than the opinions of nonspecialists. *Id.;* §
404.1527(d)(5).   An ALJ may reject the uncontradicted medical opinion of a treating physician
only for "clear and convincing" reasons supported by substantial evidence in the record. *Id.* at
1202, citing *Reddick v. Chater,* 157 F3d 715, 725 (9th Cir 1998).   If the treating physician's
medical opinion is inconsistent with other substantial evidence in the record, treating source
medical opinions are still entitled to deference and must be weighted using all the factors
provided in 20 CFR 404.1527. *Id.* citing SSR 96-2p.  An ALJ may rely on the medical opinion
of a non-treating doctor instead of the contrary opinion of a treating doctor only if she provides
"specific and legitimate" reasons supported by substantial evidence in the record. *Id.*

A.  John P. Merrick, M.D.

John P. Merrick, M.D., examined Reiman on June 13, 2002.  Tr. 222.  Dr. Merrick noted
recent MRIs showed multilevel degenerative disk disease without disk herniation.  Reiman had
no radiating pain, no weakness or numbness. *Id.*  Dr. Merrick found decreased range of neck
motion, and low back tenderness with moderate muscle spasm.  Reflexes and strength were intact
in the upper and lower extremity.  Dr. Merrick assessed chronic pain syndrome with degenerative
disk disease, and stated "I feel this is disabling." *Id.*

Dr. Merrick  stated that Reiman's retail clothing store work was aggravating his
symptoms, and noted that Reiman was "looking to cut back hours and get out of this job.  He has
applied for SSI disability." *Id.*  Dr. Merrick wrote "For his back pain suggested regular walking
and swimming and advised him that getting a good night's sleep in improving his mood would be
helpful." *Id.*  Dr. Merrick stated that Reiman was not interested in narcotic medication for his
pain.

9  - OPINION AND ORDER

Dr. Merrick saw Reiman again on January 17, 2003.  Tr. 219-20.  Reiman's "chief complaint" was "fill out forms."  Tr. 219.  Dr. Merrick noted MRIs indicating multilevel degenerative disc disease.  Reiman did not want to use narcotics, but was willing to try a muscle relaxant.  Reiman reported "7 out of 10 pain on an ongoing basis and often times higher."  *Id.*  Dr. Merrick diagnosed "disabling degenerative disc disease at multiple levels throughout his spine," opined that Reiman could sit or stand only for an hour or two a day, and noted that Reiman was leaving for Vietnam in the next week.  Tr. 220.  Dr. Merrick completed a form indicating that Reimer could lift 10 pounds occasionally, one pound frequently, could walk or stand two hours in an eight hour day, and sit two hours in an eight hour day.  Tr. 221.  Dr. Merrick noted objective evidence of range of motion restrictions and the MRIs, and opined that the restrictions began on June 1, 2002.  *Id.*

As to Dr. Merrick, the ALJ stated:

> In addition to describing the claimant as having 'disabling' pain, which is an issue reserved to the Commissioner under Social Security Ruling 96-5p, six months later in January 2003, Dr. Merrick completed a functional assessment form imposing restrictions consistent with less than a full range of even sedentary work [citation omitted].  The opinion is not persuasive.  Dr. Merrick saw the claimant only one time, and never established a treating relationship or longitudinal record.  Further, the functional assessment contains very extreme limitations, including an inability to lift more than one pound frequently, or to sit for more than 2 hours in an 8 hour day.  Even the notes from Dr. Merrick's one contact with the claimant do not include such subjective complaints.  Notably, the claimant's regular trips to Vietnam require vastly more extended periods of sitting than Dr. Merrick's assessment, but even more importantly, when seen by Dr. Merrick, the claimant was still running his business doing medium level work, which is inconsistent with the assessment, and the form was completed six months after Dr. Merrick had even seen Mr. Reiman, so he had no knowledge

whatsoever of his current medical condition or limitations.  For all of these reasons, Dr. Merrick's opinions are not of significant probative value.

Tr. 21-22.

The ALJ correctly notes that the ultimate issue of disability is reserved to the Commissioner.  20 CFR § 404.1527(e).  The physician's opinion must be considered in light of (l) the length of the relationship; (2)  the kinds and extent of examinations and tests performed; (3)  the supportability of the opinion by medical signs; (4)  the consistency of the opinion with the record as a whole; (5)  whether the source of the opinion is a specialist in the relevant area; and (6)  the extent to which the source is familiar with other information  in the case record.  20 CFR § 404.1527(d).

The ALJ erred in asserting that Dr. Merrick saw Reiman only once.  The records indicate that he actually saw him twice.  However, the ALJ's conclusion that the relationship was not lengthy is correct, and the January 2003 visit was apparently scheduled not for medical care, but rather for the completion of paperwork.  The medical signs were not consistent with disability in that Reiman's strength was intact and his reflexes normal.  Tr. 219.  At the June 2002 visit, Reiman was working full time at a medium exertion level position, which was inconsistent with Dr. Merrick's opinion that he was completely disabled and unable to lift more than one pound frequently.  Dr. Merrick is a family practitioner, not a neurologist, and there is no evidence that he considered Reiman's daily activities or other information in assessing his functional limitations.  Dr. Merrick's conclusion is contradicted by substantial evidence, and the ALJ offered clear and convincing reasons for rejecting it.

/ / /

11  - OPINION AND ORDER

B.  Danny L. Whitehead, M.D.

Danny L. Whitehead, M.D., examined Reiman on July 9, 2003.  Tr. 330.  Reiman had

"gradually worsening pain in the neck and lower back."  *Id.*  Dr. Whitehead diagnosed cervical

disk degeneration, and advised the continued use of ibuprofen as needed.  On September 2, 2003,

Dr. Whitehead again advised continued use of ibuprofen, and noted that Reiman was moving to

Vietnam for a year.  Tr. 326.  In a report to a private insurer dated September 2, 2003, Dr.

Whitehead stated:

> Mr. Reiman has degenerating spinal disks in his neck, mid-back,
> and lower back.  He is in constant pain as a result.  This condition
> also causes sleep deprivation and the emotional stress it causes.
> This condition is permanent, irreversible, and will worsen over time.

Tr. 278.

The ALJ wrote:

> Also, VA physician Danny Whitehead, M.D., wrote an "annual report"
> letter to Unum Insurance in September 2003 to establish disability for
> purposes of continuing a private disability insurance income [citation
> omitted]....This opinion is not convincing in light of the above factors,
> and for additional reasons.  In the letter, Dr. Whitehead expressed his
> annoyance at having to spend time doing "paperwork for private in-
> surance companies," and was apparently acting as patient advocate.
> "Constant pain" is not supported by the longitudinal treating records,
> is inconsistent  with the claimant's use of only over-the-counter Ibu-
> profen, when needed, the objective findings, and with his activities
> of daily living which are described above.  The letter also does not
> purport to articulate or assess any functional restrictions, in favor
> simply of supporting a continuation of private disability income on
> the basis of physical impairment.

Tr. 22.

The ALJ rejected Dr. Whitehead's opinion as not supported by the record.  The ALJ

summarized Reiman's medical history, noting that Reiman reported only "mild low back stiffness

12  - OPINION AND ORDER

and pain at times" in May 2001.  Tr. 16, 186.  In April 2002, Stephen J. McGirr, M.D., reported

that Reiman did "extremely well" after his 1997 surgery, and his physical examination showed

normal strength, reflexes, and sensorium, though Reiman reported limited right lateral bending,

rotation, and flexion.  Tr. 16; 213-14.  Reiman's May 2002 lumbar MRI showed degenerative

disk disease with a mild annular bulge and his cervical MRI scan showed moderate to severe disc

narrowing and degenerative disk disease with small osteophytes and mild forminal narrowing.

Tr. 16; 215-17.  In May 2002, Dr. McGirr recommended physical therapy, and in September

2002, he stated that Reiman was not a surgical candidate, but that he should change his activity

level and Reiman was "probably not capable of continued high level activity."  Tr. 16; 211.

    In March 2003 Reiman reported to Howard Yingst, M.D., that he had stopped taking

Ibuprofen and walked two to three times a week.  Tr. 16; 340-41.  Dr. Yingst stated that Reiman

had limited neck range of motion and mild thoracic and lumbar tenderness, but had active

resistance in his shoulders, full upper extremity range of motion, normal sensorium, and his

straight leg test was negative.  Tr. 18; 341.  Dr. Yingst  recommended Ibuprofen and

hydrotherapy, minimal treatments which do not suggest disability.  Tr. 16; 22; 341.  Reiman's

April 2003 lumbar x-rays showed no disc herniation, only "[m]oderate degenerative change at

L3-4 with minimal scoliosis," his thoracic x-rays showed "[m]inimal scoliosis and mild

degenerative change," and his cervical x-rays showed "moderate degenerative changes with disc

space narrowing and spurring." Tr. 16; 336-338.

    Reiman was seen in Montana in April 2004 by Nurse Practitioner Jennifer Roman, for

increasing back pain.  Tr. 304-06.  Nurse Roman reported no acute distress, Reiman walked

normally, had some limitation in range of motion, with a normal heel and toe walk and negative

straight leg raise tests. She prescribed an increased dosage of Gabapentin, a pain reliever.

The ALJ appropriately discredited Dr. Whitehead's opinion as conclusory and

unsupported by the record as a whole.

C.  Peter C.K. Mist, Ed.D.

Dr. Mist is an Adjustment Counselor for the VA, and counseled Reiman for two years.

He has stated on several occasions that Reiman could not tolerate competitive work.  Tr. 285;

287-88.  In September 2001 Dr. Mist diagnosed severe PTSD, and assessed Reiman with a

Global Assessment of Functioning ("GAF") score of 49[2].  Tr. 289-92.   In March 2002 Dr. Mist

assigned a GAF of 35.  Tr. 293.  In November 2002 Dr. Mist assigned a GAF score of 15, and in

December 2002 Dr. Mist stated that Reiman's GAF score had dropped to below 15.  Tr. 285-87.

A GAF score of 15 corresponds to "suicide attempts without clear expectation of death,

frequently violent, manic excitement" or "largely incoherent or mute." *Diagnostic & Statistical*

*Manual of Mental Disorders,* at 32 (4th ed 2000).

The ALJ properly reasoned that Dr. Mist's disability opinion was "based on full

acceptance of the claimant's subjective complaints, which are not fully credible."  Tr. 23.  Dr.

Mist noted that Reiman was quiet, withdrawn, motorically and cognitively slow, pedantic, and

---

2 The GAF scale is a tool for "reporting the clinician's judgment of the individual's overall
level of functioning."  American Psychiatric Ass'n., Diagnostic and Statistical Manual of Mental
Disorders 32 (4th ed. 2000)).  It is essentially a scale of zero to 100 in which the clinician
considers "psychological, social, and occupational functioning on a hypothetical continuum of
mental health-illness," not including impairments in functioning due to physical or environmental
limitations.  *Id* at 34.  A Global Assessment of Functioning ("GAF") score between 41 and 50
indicates "Serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent
shoplifting) or any serious impairment in social, occupational or school functioning (e.g., no
friends, unable to keep a job)."  *Id* at 32.

14  - OPINION AND ORDER

lethargic, but these are all observations of behaviors within Reiman's control.   Dr. Mist did not

administer any mental status examinations or objective tests on which to base his opinions, nor

did he review the entire record.

In addition, the ALJ noted that Dr. Mist's conclusions were contradicted by other treating

and examining physicians.  In September 2000, Oscar Leyva Yapur, M.D., described Reiman's

GAF as 70 to 73, indicating "some mild symptoms" but "no more than slight impairment in

social, occupational, or school functioning." Tr. 193.  In June 2001, Dr. Whitehead opined that

Reiman had mild PTSD, but Reiman declined to take medication and stated that he felt he didn't

need any.  Tr. 187-88.  In September 2001 Ms. Welches opined that Reiman had mild PTSD

symptoms of depression, but he had frequent contact with his children and "positive relationships

with co-workers." Tr. 181.  His insight and judgment were good and his GAF score was 78, in

marked contrast to the GAF score of 49 assessed by Dr. Mist during the same month.  Tr. 181-

82.

The ALJ noted that Reiman's VA disability rating due to PTSD was increased in

December 2002 from 70% to 100%, effective August 2002.  In March 2003 Reiman stated that

he had quit taking antidepressants "months ago" because he was "feeling less depressed" since no

longer battling for his VA disability.  Tr. 343.  In November 2002, when Dr. Mist was assessing

a GAF of 15 or less, William McConochie Ph.D. examined Reiman.  Tr. 153-57.  Dr.

McConochie noted Reiman's daily activities, and stated that while Reiman "sees himself as

definitely disabled," he "does not appear to have any major psychological limitations to work

activity per se." Tr. 157.

15  - OPINION AND ORDER

Dr. Mist's conclusions are contradicted by substantial evidence and the ALJ offered clear and convincing reasons for rejecting them.

D.  Rex W. Turner, Ph.D.

Dr. Turner, a psychologist, examined Reiman on November 20, 2001.  Reiman reported "no new significant developments in terms of physical health or deterioration except to note his complaints about the rejected claim from tinnitus bilaterally which bothers him significantly." Tr. 175.  Dr. Turner opined that Reiman had no impairment in thought processes or communication, though he had a defeated attitude.  He noted that "[e]valuation of the effects of signs and symptoms on occupational and social functioning indicate deterioration in social functioning in particular.  The veteran has maintained consistent occupational functioning as a retail clothing salesman at his store...for approximately nine years.  This does not appear to be changing, although the veteran noted that he has concerns about his ability to continue in his self-employed ...business at the same level of efficacy as he has done in years past."  Tr. 178.   Dr. Turner diagnosed PTSD, moderate to severe, and dysthymic disorder, moderate to severe, and assessed a GAF of 49.  Tr. 178-79.  Dr. Turner recommended that Reiman's VA service connected disability for PTSD be increased from 10% to 30%.  Tr. 180.

The ALJ noted that Reiman reported to Dr. Turner "extreme difficulty in establishing and maintaining effective work and social relationships," and stated:

/ / /

/ / /

/ / /

/ / /

16  - OPINION AND ORDER

> This level of impairment was clearly exaggerated, and demonstrates
> Mr. Reiman's predisposition to inflating his limitations when there
> is financial incentive.  It was inconsistent with and directly contra-
> dicted by the fact that at the time, and for a significant period
> thereafter, Mr. Reiman was self-employed successfully operating
> The Cotton Mill on a 50-60 hours per week schedule by his own
> report [citation omitted].  Even so, at that time, Dr. Turner recom-
> mended only a "modest increase" from 10% to 30% in the claimant's
> VA service-connected post traumatic disorder disability [citation
> omitted].  Even with this rating, the claimant was continuing to work
> at substantial gainful activity levels.

Tr. 24.

Dr. Turner's opinion, to the extent that he found Reiman disabled by PTSD, is contradicted by substantial evidence, and the ALJ offered clear and convincing reasons for rejecting it.

III.  <u>The ALJ Properly Assigned Little Weight to the VA Disability Rating</u>

In December 2002 the VA granted Reiman 100% service connected disability for PTSD, effective August 2002.  Tr. 343.  The ALJ noted this fact, and cited his prior conclusions regarding Reiman's credibility, and the credibility of  Drs. Mist and Turner on the issue of the severity of Reiman's PTSD.  The ALJ stated that the VA decision did not consider Reiman's RFC or assess his credibility, and that the VA Award Letter submitted by Reiman did not include the "Rating Decision," so that no rationale for the VA decision was submitted in this matter.  Tr. 24.

The ALJ articulated valid, specific, persuasive reasons to assign little weight to the VA's disability determination.

/ / /

/ / /

17  - OPINION AND ORDER

IV.  The ALJ Properly Found that Reiman Could Perform Past Relevant Work

Reiman had the burden of showing that he could no longer perform his past relevant work.  20 CFR § 404.1512(a); 404.1520(f).  The ALJ's hypothetical question to the VE included all limitations supported by substantial evidence in the record.  The VE testified that a hypothetical person with Reiman's background and RFC could perform Reiman's past relevant work as a lumber sales representative, which is classified as light work, but was sedentary as performed by Reiman.  Tr. 381-82.  In addition, the VE testified that Reiman could perform his past work as a retail store manager, also light work.

For these reasons, the Commissioner's decision is affirmed and final judgment is entered pursuant to sentence four of 42 USC § 405(g).

Dated this  19th   day of April, 2006.


/s/ Michael W. Mosman
MICHAEL MOSMAN
United States District Judge

18  - OPINION AND ORDER